Petition for a Rehearing by
Haggin & Monroe.
That all the forms and ceremonies of practice, known and unknown,' should have been strictly observed, and the proof made perfect, touching all the matters of fact controverted in this *211 complicated cause, and in the first instance, must be the effect of rare luck, or very extraordinary skill and assiduity; in so much, that although the opinion seems to have been written with a running pen, no difficulty presenting itself upon any point: yet we trust that upon more mature consideration the complainants have in many instances failed.
Petition for a re-hearmg.
On the subject of jurisdiction. We find that the learned counsel who prepared the bill, was at a great loss to shape its prayer. They who argued the cause for the complainants seemed to have no definite views of the tenor proper for a decree. And so far as our practice or knowledge will extend, it is without precedent or authority. The defend' ants therefore, denied the power of the court. But this honorable court disavowing any doubt on the subject, and the counsel of the defendant being very sensible that their arguments unsupported by cases can avail but little, it is most probable this will stand, as it has been announced from the bench, an ejectment bill. Still as this is the first case, and in a land presenting thousands of titles in like manner perplexed, and leads to a most frightful scene of litigation, we should have been gratified that this honor-bie tribunal had pointed out the analogies, and had not rested content in avowing itself “unable to perceive why this case was not within the spirit of those.” This innovation, however, upon the practice as we trust we are authorized by the opinion delivered to consider it, would not have alarmed the defendants in this cause, had it not been oil owed by a greater inroad upon principle. The rule that he who would ask the aid of the chancellor, must first do equity is expressly, declared inapplicable and laid aside. Baidcs might not have suffered very essentially in being required to convey his lands upon the payment of the price with its interest. But to deprive him of his lands and money too, is palpable injustice. He purchased from his country, paid the price, and obtained a grant. The land was his. In the year 1795, he sold, or contracted to sell, at the sum of £8000. He has not yet been paid, nor has fraud been imputed to him. And now he is compelled to convey his land, or consu- *212 mate the title without value, or the hope of it. For the purchaser or sureties are insolvent, dead or fled the country, it may be the rule, but if it be, the chancellor sometimes lends himself a willing instrument for purposes unfair and iniquitous. That instilution which owes its existence to the necessity of redeeming itself from the hardships incident to the rigid and inflexible rules of the common law, becomes itself most technical, and improves on the outrage. Blight no where suggests a fact calculated to place him in a better attitude than that of the first purchaser. Suggests no fraud, no encouragement on the part of Ranks, that ho should make the purchase. No delusion, no mistake on his own part. We believe he could not in truth, for he is a purchaser of the whole claim of 113,000 acres of laud, for $400, or about that sum in the year IS — , and at that time, Others claiming by contract for purchase under Ranks, were in the actual possession. It must however suffice, that he alleges nothing to better his condition. Left at law under the imperfect state of his title papers, he could only recover so much of the purchase money as had been paid with its interest. Now the consideration is withheld, and the land is decreed. The consideration! paid by Blight is but little more than nominal; yet he probably gets an estate worth 0100,000, at id Banks receives nothing. This is intrinsically wrong. All must so exclaim. And such are our views of the duties of the chancellor, whenever we witness palpable injustice at his hand, we suspect principle has been violated. The sacrifice, in the present case, we do not apprehend to he required by the law of the chancery.
retition for a, re-hearmg,
Most certainly had this transaction remained in bonds, between the original parties, (and it is most clear that Blight cannot claim other advantages,) however absolute the terms, and however satisfactory the security for the price had been in the first instance, yet no conveyance could have been decreed without a payment of the price. The chancellor must answer to every such application, that he only acted upon the condition of,doing justice to all concerned. And could not be tempted to be *213 come a partisan. Gratuities and favors, he neitlier dispenses, nor will he coerce. He looks to the consideration, requires that it be adequate and full}'' satisfied. Why then do we dispute about specific liens, the discharge of that lien, &c. &c. The principle for which we contend, applies to all contracts of every character, and in relation to all subjects. The complainant must do equity before he can call in aid the just chancellor. And those questions of lien apply, when the vendor may seek a recovery of his money. Now it is not contended that the purchaser who has stipulated for long credit, and an early perfection of the title, the ultimate payment of the money being secured, shall not have a title. But we do say that so soon as it shall appear to the chancellor, that the money which was deemed secure, is jeopardized by subsequent events, he must hold off until that difficulty be removed.
Petition for a rc-hoaring.
It is however supposed that an attempt to. consúmate the title in this case, essentially changes^ the rule. This were to overlook the .substance of things, and yield tó circumstances of no worth. In foro conscientice, the man who has obtained a deed for land without price, has no higher claims than one who lias but a bond. And lie who has paid the value, however informal his evidence may be, has equal merit with him who holds the deed. At law these solemnities, and estoppels avail much, but in chancery they are light indeed. If the complainant has deeds sufficient to recover the land, possibly 'the court would not cancel them upon any state of case which Banks could prove. Then let his hill be dismissed without prejudice. This is the plain and common, anduniversallcourse. Let him sue at law, and make the most of his title. Perhaps Banks will defeat him, and he may find it expedient to close the transaction upon just terms. No, says the court, it is wrong to dismiss Blight’s bill, because they couklnot decreefor Banks. A rare conclusion. In direct opposition to the most general and familiar principles. Then the rule should not be to inquire into the equity of the complainant, but what Would he the pretentious of the defendant, should *214 be change sides. Then no bill should be dismissed without prejudice to the complainants remedy at law, but however imperfect his equity, the court should weigh it in the scale with his adversary, strike the balance, and close the contest. We trust it will be found an invariable rule in equity to refuse relief to the complainant upon any other terms than that he shall do what is fair and equitable on his part.
Petition for a re-hearing.
The court howdvfer seems to find some consolation for the hardships the defendant may suffer in the estimate which he put upon his claim, as evidenced by his contract with Lewis. There he was willing to take half. The remark we had not expected. We knowr that counsel sometimes indulge in such allusions. Their motive is obvious. Yet we have still understood it to be the province and the duty of the court to decide upon rights as they appear in proof, and not as they may be appreciated by the parties. It appears that Blight paid but four hundred dollars for the adverse claim, and from this perhaps the inference might be drawn, that he was also to pay Banks his £8000 with its interest. But suppose it had been shown that he paid, and only expected to pay $¡400, and that he had agreed to give his lawyer or some speculator, one half the land which he might recover, as a compensation for bis services in superintending the suit. Yet none who know this court, we presume, would venture to say, that this fact will prejudice the cause of the complainants, or his attorney or agent.
We do not consider Blight as having proved his claim of title. Banks may successfully resist any claim except from those who shall show a purchase from him. This is to be done as every other fact, by proof;by deeds, depositions, &c. and in taking depositions, it is his privilege to cross examine the witnesses. And because this privilege cannot be exercised in the preparation of answers, the answer of one defendant in chancery cannot be used in evidence against another. Whenever therefore, a complainant would avail himself of the testimony of one defendant, he must obtain leave, and take his *215 depostion. Thus are the authorities in regard to answers. But we think there can be much ie=s said in favor of giving the bill in evidence against one defendant, because another has not answered it.
Petition for a re-hearing,
Before the act of February, 1815, 1 Dig. L. K. 61. Neither of the complainants could have maintained his bill against the unknown heirs of the several persons alleged to have been interested in the title to this land, all of whom are necessary parties,
This statute authorizes the suit, but it expressly makes it a condition, “that such complainant before the emanation of any process, or making any order agaiust such heirs, do file in the clerk’s office, with his or her bill, an affidavit, stating that he or she does not know the names of such heirs.
The want of this affidavit made the bill demura-ble, the decree liable to be set aside, or reversed, on an appeal or writ of error.
In the case of Hynes vs. Oldham, fall term, 1826, page 267, this court says, “such an affidavit is expressly required by the act which authorizes a bill in chancery to be filed against unknown heirs, and the want of it would be undoubtedly fatal on demurrer, and even render the decree erroneous; and liable to be set aside, where it has been, as in this case, pronounced upon the bill taken for confessed, for want of an appearance of the defendants.”
If a decree had been rendered by the General Court for Blight, giving him the relief he prayed, it would have been “erroneous and liable to' be set aside.” And if so, it is respectfully insisted this court will not reverse the decree dismissing his bill — - Except it be merely because the dismissal is absolute, whereas it may be said it ought to have been without prejudice; but in such a reversal no costs will be decreed. Galloway and Hamilton, fall term 1826, page 270, and many other cases.
In the mandate, the court has directed a decree to be rendered, that all the defendants, including, of course, all the unknown heirs, release and conyey to *216 Blight’s heirs all the land except the nineteen hundred acres. And yet if the counsel understand the case of Hynes against Oldham, had such a decree been pronounced against these unknown heirs on the hearing in the General court, it would have been erroneous and liable to be reversed or set aside. These unkown heirs are appellees in Blight’s appeal.
Petition for a se-hearing.
There is an affidavit of one of Blight’s counsel, made on the filing of an amended bill, and a bill of revivor against Richard Claibourne, stating that the persons and names of the heirs of Claibourne were unknown to him, and he verily believed they were unknown to his client, Samuel Blight. And there is another affidavit of another of Blight’s counsel, swearing without qualification to an amended bill, in which it is alleged the heirs of Clibourne, and a number of other persons were unknown to the complainant, but that they were all non-residents of this state.
The- statute prescribes the proof the court shall require before it proceeds in a cause against the unknown. It says the complainant shall swear, he or she does not know. The reasons are so obvious and unanswerable against such a departure from the unambiguous law as would be required to permit a lawyer to swear, in his client’s stead, to his client’s ignorance of a fact, that is not believed it would be respectful to the tribunal to dwell upon it. It is presumed, the objection, for the want of the complainant’s affidavit escaped the court; we are sure the court has not taken those of his lawyers as a substitute for it.
The orders of publication against the absentees who have not answered, are insufficient; the publication of them, and the evidence thereof, we would respectfully insist, are all insufficient.
As to the orders of publication, Blight never obtained but two; at all events he never attempted to publish more. The first, was when he filed bis original bill in tbe Hardin circuit court, at the April term 1814, (before the passage of the ¡aw author- *217 king the proceedings against the unknown heirs.) This order is against H. Banks, R. Ciaibourne, J. Trenohard, the heirs of D. Allison, B. Allison, the heirs of W. Shannon, Will. Tilghman, J. Hop-kinson, Thom as Compton, Samuel Jones, James Ewing, J. Keighan, J. Fries, Guy Bryant, John Lisle. This was for eight weeks. The other order was obtained in the General Court, January term 1825; and is against the unknown heirs of said Ciaibourne, Trenchard, D. Allison, B. Allison, William Shannon, Thomas Ewing, Samuel Jones, J. Keighan, and new parties introduced after the original bill, David Barbour, Colburn Barrett, Ilenry Ser-vantes, Pierre Louis Philip GalbottDe Lomerie, omitting the following, who are included in the first order, William Tilghman, Joseph Hopkinson, Thomas Compton, John Fries, Guy Bryant, and John Lisle.
Petition for a rc-Uearing.
We would insist the first order is defective, in not directing the publication to be made for two months, and in expressly requiring it to be made for eight weeks. It seems to us, it had better been wholly silent as to the publication, and left that matter with the complainant and printer.
To prove the insertion of this order in the newspaper for two months, an affidavit of an individual is relied upon. We object to its competency. No statute authorized the justice to administer such an oath, and no usage of equity allowed any such proofs. But the other day, a cause was reversed, because the only proof of the service of a subpoena was an affidavit of a private individual, that he had executed it by delivering a copy made before a justice of the peace, and filed in the record. If this objection could be gotten over, the affidavit does not prove enough. It is sworn to in Breckenridge on the 22d day of July, 1814, four days after the commencement of the July term, on the first day of which, the order required the absent defendants to appear, and it only states, that the order had been published in nine newspapers since the last term of the Breckenridge circuit court, one in each week successively. It does not say these njne papers werp all published before the commencement of the then *218 current term of the court. One may have been published on the Tuesday, Wednesday, Thursday or Friday of the first week of the term and yet the affidavit be strictly true. And if the lust paper had been published even the Saturday before court, and each of the others on the same day of the eight preceding weeks, there were yet not two calendar months from the publication of the paper in which the order was first inserted to the first day of the July term; it would be only fifty-eight days; the case of Miller against Hall and Hanks, 3d Monroe, case 85, page 242 is conclusive. For the same uncertainty as to whether the publications had been made prior to the term, the absentees were required to appear, the decree is reversed. And the court refused to enter into any construction of the affidavit but held the complainant to a strict compliance with the law.
Petition for a re-hearing.
As evidence of the publication of the other order, there is h certificate of Amos Kendall, who stiles himself one of the editors. The law requires the certificate of the printer. We think the printer of a paper and the publisher of a paper may he, and are in fact, frequently, very different persons from the editor; and as the law has given this credit to the certificate of the printer and not to the editor, we do not think the court ought to extend this innovation on the common law and usage. It is a rule of construction that the common law shall not he repealed, but by express enactment or necessary implication.
'The title of De Lomerie, we would again respectfully insist, passed to Lewis, by the sale of the Register of the Land-Office. The court decide that he acquired by the conveyance to him, all the land embraced by. the lines of the deed, though the quantity is called but 5,277 acres, and it appears there are actually included within the line, twenty thousand acres and upwards. And as we understand the record, the same tract of land conveyed to De Lomerie, was sold for the taxes, by the two sales, upd passed by the Register’s deed.
Petition for a re-hearing.
We would make no remark on the answer, of Banks, but for regard for the feelings of that gentleman. We do not understand him at any time to acknowledge that the deeds aré genuine; but confiding in other matters of defence, he was willing to admit the deeds, if those facts were conceded to him. The counsel of the complainant understood him thus, and not willing to grant his terms, presented an amendment requesting an explicit answer. And he then expressly negatives the instruments. Still he is supposed to labor under a weighty consciousness of their truth. But the deeds are said to be proved by depositions taken in another suit, copies of which are filed in this. There Banks was no party. An order of peculiar caution was made on the calling of this cause by consent. All documents and proofs were excepted to, and every exception reserved to be made with full effect in this court. And a decree was pronounced by consent, with a reservation of every right.
Whatever testimony should have been rejected in that court must now be excluded.
Banks is not bound by depositions taken between others. This is acknowledged. But it is relied that Lewis made an agreement to read them, that Lewis became agent of Banks, by a subsequent agreement, in which Banks affirmed that arrangement. And that Blight filed his bill and compelled the production of the agreement between Banks and Lewis.
Now this supposed agreement between Lewis and Blight is not proved, nor do we find that it was ever recognized by rule of court; nor when it was deposited among the papers. We do not admit it binding on Lewis, it is certain a bill in chancery was filed, calling forth an agreement between Lewis and Banks. The object not very distinctly avowed. But let it be, that it was to give effect to aside bar arrangement, for the reading of irregular depositions. Truly a singular bill. In all other cases, unless the parties assent in court to informal testimony, the court rejects and requires the defect shall be supplied. May we not presently have bills in. chancery to continue suits. The papers, however, *220 are brought forth. And it does not appear when this alleged arrangement between Blight and Lewis was filed; nor that Banks ever saw or heard of it; nor ever approved .or disapproved. He did constitute Lewis his agent, to prosecute and defend suits, and expressly bound himself by agreements of Lewis, made or to be made for a compensation of his attornies &c. &c. We do not believe any thing can be found in those writings in any shape referring to the agreement between Lewis and Blight, about those depositions. Presently, however, Banks and Lewis assume cross attitudes and thus continue. We say that when this arrangement was entered into, Lewis had no authority from Banks. That -the writing expressive of that arrangement does not purport to bind Banks; that Lewis, at no time after he acquired power from Banks, did any thing calculated to bind Banks; and that Banks, if it be genuine, neither knew or approved of it. Iiow can they be read against Banks. A rehearing is, therefore, respectfully solicited.
Petition for a to-hearing.
Equity ha.s jurisdiction to order noiv deeds of conveyance to be executed, where the oi-iginals are not registered, that they may be re-protect the estate from the creditors grantors,